We're ready. Our third case this morning is 23-1113, Quintana v. Dodge. If you may proceed. May it please the Court. Good morning, Your Honors. My name is James Cato. I'm appellate counsel for the defendants in this case, Denver Police Department officers Justin Dodge and Richard Eberharder. Your Honors, this is a case about an hours-long armed standoff in Denver, Colorado, where the individual defense in this case entered into negotiations with Mr. Joe Quintana. And those negotiations were unsuccessful. Later, a robot was used to attempt to communicate with him, which was also unsuccessful. And eventually, both smokeless and tear gas canisters ended up being used in the house where Mr. Quintana was staying, which is the plaintiff's, Mary Quintana's, house. Here, Your Honors, we are on appeal from an order denying summary judgment as to the individual officers. And the defendants here respectfully request that this Court reverse the district court for a few reasons. Most importantly, Your Honors, because the district court's ultimate finding that the facts in the case indicated that the officers were willful and wanton is an error. And beyond that, Your Honors, the district court's analysis also appears to be an error. Beyond that, Your Honors, this Court does have jurisdiction to hear this case. I intend to first address the jurisdictional issue for this Court before turning to the merits, but I, of course, welcome the Court's questions. As to the jurisdictional issue, the most pertinent issue for the Court appears to be whether or not this is a sufficiency of the evidence appeal that is prohibited by the United States Supreme Court case Johnson v. Jones. Here, however, the most compelling argument for why this is not a sufficiency of the evidence appeal is by reviewing both the record of Johnson v. Jones and the record here in addition to binding law in the Court. In Johnson v. Jones, there is a... I thought your argument was that it wasn't a jury question. Willful and wanton wasn't a jury question. It was a question for the trial court. Your Honor, I don't think that that argument is made in our briefs. That would be a state procedural element that's in the Colorado Governmental Immunity Act. We do make an argument that should the Court feel inclined to affirm the district court, that it may remand with the instruction to conduct an evidentiary hearing as to whether or not the officers were ultimately willful or wanton. Who decides, jury or judge? Well, Your Honor, that has to do with the specific... The quick answer, Your Honor, is in Colorado, a judge. And in federal court, we would respectfully submit that eventually a judge must determine that. Well, the judge did decide that. He didn't conduct a Martinez or a Trinity hearing, but he did entertain a 12B1 motion. And under the Colorado Governmental Immunity Act, the Trinity hearing is a procedure to facilitate the disposition of a motion to dismiss. The judge had already decided the motion to dismiss. Your Honor, I think that's right. I think that that issue was determined in the motion to dismiss, but I'm not certain that the Court's holding was conclusive in that sense. And I think that has to do with sort of the complicated interplay between the Colorado statutory law, which requires a conclusive finding as opposed to what Rule 12B1 requires, which is some limited fact finding on top of a plausibly fled complaint under 12. Well, there can be under 12B1 a factual attack on jurisdiction. I mean, you can present affidavits, and I don't think it happens often, but I don't see why you couldn't ask a judge for an opportunity for an evidentiary hearing. Because it can be considered not only a facial attack on the jurisdiction predicated on the complaint, but it can also be predicated on actual facts. And so it seems to me that if you wanted a Trinity hearing, when you move to dismiss in district court, you present affidavits, you ask the district court for an evidentiary hearing, and that would be the same as if you did it after losing on a 12B1, losing on a 56 motion, and then coming back and saying, okay, well, we want to go back and do our second 12B1. And now we want a Trinity hearing, which we could have asked for two motions ago, but why am I wrong about that? Well, Your Honor, I think your question is well taken here, but I'm not certain that the factual record in this case indicates that that review was undergone. And more pointed towards your question, Your Honor, I'm not certain that a Trinity-type hearing is actually something that a federal court can engage in at that Rule 12B1 stage, just because the procedures present in Rule 12B1 are sufficient to serve that state interest. In addition, there is a subsequent federal procedural rule that would aid the court, which would be Rule 56. And so I believe that... Why wouldn't the Governmental Immunity Act be substantive state law that the federal court should apply rather than a federal procedural law? Your Honor, I believe elements of the Governmental Immunity Act are substantive. Most importantly, as held in Schmitz and in Aspen Orthopedics, it's that right in immunity from suit. And however, I believe also in Schmitz, Your Honor, the court, Schmitz v. Colorado State Patrol, the court found that the applicable Trinity procedures were not substantive in terms of the way that a federal court could apply them. So while the right itself is substantive, Your Honor, and provides jurisdiction under the collateral order doctrine, the procedures in the Trinity hearing are not. Counsel, could I get back to your jurisdictional argument? In the summary judgment order, the district court said, and I'm quoting, the individual defendants readily admit that whether a defendant acted willfully or wantonly, it's usually a fact issue reserved for the jury. Do you agree with that? Your Honor, I think frequently it can be an issue of fact, and Your Honor, whether or not someone is willful or wanton can be an issue of fact, certainly. But that does not mean that it can't also be an issue of law, and it doesn't mean that it can't be a mixed issue. Well, just to muddy it up a little more, some of the Colorado cases talk about willful and wanton as a mixed question of law and fact. And so it seems we've got to grapple with whether willful and wanton has enough of a factual component to it in this case to raise a question whether we should be reviewing this at all. That is, we're back to jurisdiction. Your Honor, I think you're right. And I think whether or not willful or wanton is a question of fact is something that would be different depending on the case that's before the court. For example, if there were important disputed facts between the parties, if the defendants in this case argued that they didn't throw the last CS canister into Ms. Quintana's home, I believe that that would be an obvious issue that would create an issue of fact as to whether or not they're willful or wanton. But here, Your Honor, there's no disputed facts, and particularly in relation to the type of facts in Johnson v. Jones. In Johnson v. Jones, it's a 1983 case. It's a police brutality case. And before the Supreme Court, there was a question of whether or not an officer was present when an individual was beaten. And the Supreme Court rightly decided there that that's an issue of fact, a very basic issue of fact that the courts of appeals should not be holding interlocutory appeals for. But here, Your Honors, it's more of an ultimate question of liability in this case. It's not the underlying facts that are being challenged, but rather or not the ultimate grading, whether that conduct is negligent, whether it's willful or wanton or reckless. Well, the district court characterized it as willful and wanton presenting a genuine issue of material fact. I take it you do disagree with that. We do, Your Honor. And I think the most on-point authority for the court here would be either Walton v. Powell or Plumhoff v. Rickard, which both sort of modify the Johnson v. Jones test. Well, one case that gave me pause out of Colorado, Pettengill v. Modi, the court said, and I'm quoting, the evidence is such that reasonable minds might draw different conclusions therefrom. It is proper that a jury decide the issue as to, again, willful and wanton. Isn't that what the judge did here? Reasonable minds could disagree on willful and wanton, so it's got to go to the jury? Your Honor, that is what the court has done here. But the Colorado Supreme Court in terror mining, a case that's about 40 years after Pettengill, came out on the different side and found that this was, in fact, an issue of law that could be resolved in an appeal. In terror mining, Your Honors, the court conducted an analysis of both the willful and wanton mental state and the culpable conduct of the defendant in that case. Now, as Plaintiff points out in his briefing, that's not a CGIA case, but the court's applying essentially the same substantive definition of willful and wanton. And furthermore, because of the procedural posture in Colorado courts, the issue of CGIA, willful and wanton, is frequently not litigated in an interlocutory stance. There's a final decision made as to whether or not it happened. You referred to your brief as to the evidence being insufficient. Is that the right way to present your argument if what you're saying, I take it what you're saying is that the facts are undisputed, and on the basis of those facts, we don't have willful and wanton, but is it really a sufficiency of the evidence question? Your Honor, I think you're making an important point here. Perhaps the argument in the brief is a little bit inartfully termed, but that is the substance of what we're arguing. And as you can tell from the substance of the brief, there's no disputed fact between the parties. We're not arguing that we didn't start the fire for the purposes of this motion, and we're not arguing any of the printed issues, particularly those that the district court found to constitute willful and wanton conduct in its order, Your Honor. And with the Court's permission, I'd like to reserve the rest of my time. Thank you, Your Honor. May it please the Court. Your Honor, this is... Could you identify yourself? Oh, I'm sorry. Please forgive me. Joseph Salazar on behalf of Mary Quintana Apelli in this case. Your Honor, this case is basically a second bite of an apple. They want you to start this case all over again. As Judge Bacharach has indicated, is that there was a 12B motion that was a 12B1 motion that was filed in this case early on with the original complaint, and the judge dispensed with that, saying that there was sufficient facts in there for willful and wanton conduct to be found. And so then we engaged in a basically three-year litigation stance, including discovery and motion for summary judgment, and the entire time, even though the Colorado Governmental Immunity Act allowed them to appeal this denial of their 12B1 motion on the issue of willful and wanton conduct, they never did. Well, I think that issue is front and center on the alternative argument that the appellants make with regard to their request for a trinity hearing, but obviously the decision on the 12B1 motion, that's predicated on the face of the complaint, not based on the evidence that is elicited during discovery. So obviously that's not going to forestall someone moving for summary judgment. We have that virtually every case that are civil dockets. Truly, but the line of cases demonstrate that when an entity wants to request, or even an individual wants to request a trinity hearing, they usually do so, which leads up to the issue of deciding a 12B1 motion, and that's not what happened here. We conducted limited discovery. We asked the judge for limited discovery, which was allowed, and it was based off of that limited discovery that we found a wealth of information to demonstrate that willful and wanton conduct indeed did exist, and then we amended the complaint. Now the entire time they had the opportunity to request a trinity hearing, to submit affidavits, to conduct a factual evidentiary hearing, and they failed to do that. So once the judge, under a 12B1 motion, determined that willful and wanton conduct could be found, now we get into the fact phase of this issue. Under the Immunity Act, as I asked counsel, is that a question for the jury or is that a question for the trial court to decide? So under 12B1 and under the issue of the trinity, yes, that would be for the judge to decide. But once we got beyond that, now it became a fact issue. And so we conducted our discovery, as I stated, and then we went into motions for summary judgment. And the judge correctly decided that there are disputed issues here. What were they, though? Didn't the judge just say that there was a disputed issue on whether there's willful and wanton? Is there anything else that's disputed as a matter of fact? Counsel says there aren't any disputed facts, and we're really talking about whether you have willful and wanton. Do you see it otherwise? I think, well, for our point of view, is that it's undisputed that they made numerous admissions. They knew that the chemical products that they were going to use were flammable. They worked on a plan to throw these chemical products at flammable. Well, let me just interject. Okay. I don't know that they're contesting any of that. And so if we want to zero in on what the issue is at this point, isn't it just willful and wanton? And is that an issue of law or is that an issue of fact? Thank you, Your Honor. It's an issue of fact. Because if these facts, indeed, can be presented to a jury, then it's up to a jury to decide credibility. It's up to a jury to decide whether it was purposeful. It's up to a jury to decide whether it was with deliberate indifference. That's at that point, with summary judgment, where it's a merit-based issue, it becomes an issue for the jury. And they admit in their appellate brief, in their opening brief on page 10, that this is an issue for the jury. That leads me to then say that this court doesn't have jurisdiction over this case. Before you segue to jurisdiction, what if, hypothetically, we were to say that under Colorado law, the state law for willful and wanton conduct requires an awareness that the conduct will cause the danger or, alternatively, that it will probably cause the danger. Was there evidence in the summary judgment record in which a fact finder could reasonably find that Officer Eberhardt and Dodge knew that this would cause a fire or would probably cause a fire? That was absolutely the opposite of what they said in their responses to the admission request. Sure. Thank you for that. If that was the definition of willful and wanton conduct developed by the Supreme Court, that they did know that it would cause a fire, then that would be one thing. But that one thing happens to be one thing that I asked you about. Not to be mean, but that is my question. If we find that is the law, do you lose? No, we don't lose. So what evidence was there in which a fact finder could find that the two officers were aware that this would cause a fire? Being flammable and knowing that it will cause a fire are two different things. The fact that they put these flammable chemical munitions inside of these burn boxes because they knew it would cause a fire. And so their thought process was, hey, let's take something that's really hot that burns from 600 to 800 degrees where you need a welder's mitt, and let's throw it in a metal box, one that we've never tested, one that we've never experimented on, and just throw it in the house, right? They knew that the flammable chemical munitions would cause a fire. And they think that the mitigation is what helps them escape, but it doesn't. Now, this is the fourth canister that they had done exactly the same thing. Did the first three canisters in which they put it in these metal boxes cause a fire? They didn't. They didn't cause a fire. But we don't know where those canisters, if they were placed next to flammable materials. That was another part of our request for admissions. So they didn't necessarily know that just the fact that they're putting the tear gas in these metal containers in itself would cause a fire because they had three experiences where it didn't, right? They still knew that this could cause a fire. Could cause a fire. Well, if they didn't put it in the burn box, it would cause a fire. I'm sorry. Go ahead, Your Honor. Well, I'm not trying to play games. They put all four of these tear gas canisters in these metal boxes. And I've tried to monopolize your time, but my question is really simple. Was there evidence in which a fact finder could find that these two officers knew that putting these tear gas canisters in the metal boxes would cause a fire? The admissions from the city and county of Denver to this one particular question was even placing these canisters in a metal box, is the risk of fire, did the risk of fire still exist? And the answer was yes. And also the Denver Fire Department came back with their own report saying, you can place these flammable chemical munitions inside a metal box, but the risk of the fire still existed. As well as all the materials that defense technologies provided to the city and county of Denver purportedly that the defendants were aware of, that they told everyone, do not throw these inside a house. So there was evidence that these two officers knew of the warnings from DTI? And if so, where is that evidence? The fact is that they admitted that they went through training on these particular canisters. Those materials came from defense technologies. In defense technologies materials, it clearly states that they were for outdoor use only. Now they haven't come across saying, well, yeah, we knew this. We knew that defense technology said not to use these indoors. What they said is that we have received training on this, and the training materials that they received was from defense technologies. But the city, the police department hasn't made a determination that there are circumstances when they're going to use this product indoors. I'm sorry, can you repeat that? These officers were trained by the department that there are circumstances when you can use the product indoors. That's why there's the metal container, the burn box, right? I did ask for that. Did you train them on using these flammable chemical munitions inside of burn boxes to be thrown inside a house? They said that there was no training materials available for that. Well, let me try to ask it a different way. These officers, they weren't just innovating on the run here, were they? I think they were innovating on the run. I think that's exactly what happened here. It was like a bunch of kids with some pretty dangerous materials, and they're like, hey, let's see what happens when we put it in a box and let's throw it in there. And what part of the record would support that, your position on that? The fact that they've never received training on this. Is this the first time they'd ever used burn boxes? Well, they say that this wasn't the first time that they ever used burn boxes. One person said that we've been doing this since 2015. All right, then provide me the information. Provide me the training materials that says that defense technologies trained you to use their flammable chemical materials inside of burn boxes to be thrown inside a house. And they came back, we can't provide you any materials. So I went to defense technologies, which was also part of the record. And I said, hey, did you ever let city and county of Denver know that they could disregard your manufacturer warning of not using these flammable chemical munitions inside of a house if they threw it in a burn box? They came back and said, we never told them that. And so that's why it becomes an issue of jury of fact. This becomes an issue of credibility, right? They want to say, hey, we've done this before. Look at us. There's never been a fire. And we get to come back and tell a jury, you know what? They admitted. There's no training material about this at all. And defense technologies never told them that they could use this either. They purposely did this. And that's where we get to the willful and wanton conduct. I'm so confused because I thought you had just said a couple of minutes ago when you were answering my questions that the officers knew about what DTI said because DTI had told the city that and that the city had provided the training to these two officers. But I must have misunderstood because now I understand you to say that the I asked them for the training material and they said that there was none available. So did the two officers get directly or indirectly training that DTI had said not to put these things in metal containers? And that's where it comes down to an issue of the trial. Because in the GIGI affidavit, which is part of the record, he said that he did the training. He was a defense technology certified trainer and that he provided the training. Well, indeed, if he's the one who provided the training and he is certified by defense technology, then we get to ask the questions in front of a jury, wasn't it true that defense technologies never said that you could use their products outside of their specification? Okay. But the question is, are you taking the position that they did get the DTI training? Yes. So your position is that the officers did, in effect, get this training from DTI even though you're saying that they didn't get trained? Yes. I am saying that they were trained on the specifications of the product and that they operated outside those. Yes. And they operated outside those specifications. And they've also indicated that they did receive training on the use of these materials. Now, you know, and this raises the issue of constructive knowledge. And I did point out to the court the U.S. Supreme Court's decision on Intel Corp versus Salima where they say when a person fails to learn something, a reasonable person, diligent, would have learned, right? So in their position, a reasonable person, a reasonable diligent person would have learned about should they have used these products indoors. They knew that they weren't supposed to use the products indoors. That's why they threw them in a burn box. Now, with respect, in my final moments, this is a merit-based case. This is an issue no longer about the legal aspects of willful and wanton conduct. That was decided three years ago. Next week will be three years that the district court decided the issue of willful and wanton. Now we are in the merits-based aspect of this case. And this court, and I must say that the defendant, or the appellees here, or appellants, they haven't even talked about the Cohen test. They haven't discussed whether the district court's denial of their summary judgment motion conclusively determines the disputed questions. It doesn't. Willful and wanton is a fact issue. It still must be decided by the jury. Number two, whether the district court's denial of the summary judgment motion resolves an important issue completely separate from the merits of the action. Willful and wanton conduct is entwined in the merits of the action. And whether the district court's denial of summary judgment motion is unrevealable, appeal from final judgment. A denial of summary judgment is reviewable on appeal from a final judgment, which is one of the cases that you had just before you. In closing, may I close? Yeah, you can finish up your thought. Thank you. In closing, I submit to the court that you don't have jurisdiction over this case because it is merit-based at this point. And it should proceed to a trial, and then they have the ability to appeal after that. But if you do find that you do have jurisdiction over this case, there's sufficient evidence in the record itself to demonstrate that there is willful and wanton conduct here. And there is no need for a trinity hearing. Thank you very much. Thank you, counsel. Your Honor, two brief points here in rebuttal. As to the record before the court on summary judgment, Your Honor's asked whether or not there was evidence that the officers knew    I think that's a good question. Correct me if I'm misstating the statement here, that the CS canisters, the tear gas canisters, would cause a fire. And the fact of the matter is that there is not, Your Honors, and that was, of course, plaintiff's burden to introduce that evidence at that point. What there is evidence of, to the extent that I can help clear this up, is that the officers did receive training in using the burn boxes, and that's from the Adam Gage affidavit attached to the motion for summary judgment. Was that from the manufacturer of the canister then? Was that the defense technology trainer? Your Honors, he is not a member of defense technologies. He's just an officer at the Denver Police Department. He may have a certification related to defense technology. I'm happy to follow up a supplemental briefing on that if the court requests. But in addition to that, Your Honors, there is evidence that these officers did use these canisters multiple times on the day of the incident in question, and indeed before this incident for a few decades even, in that those did not cause fires, and that the officers in their own affidavits noted that they had never seen a cause of fire before either. And that goes directly to the court's question there. As to my last point, Your Honors, I'll just briefly conclude at this point. We respectfully request that the court reverse the district court's denial of summary judgment. Thank you. Counsel, you are excused.